IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

UNITED STATES OF AMERICA       *
                               *
v.                             *     Civil No. WMN-14-224
                               *     Criminal No. WMN-09-0303
BYRON KEITH BROWN              *
                               *

  *    *    *    *    *    *    *    *    *    *    *    *    *    *    *

### MEMORANDUM

Before the Court is a Motion under 28 U.S.C. § 2255 to
Vacate, Set Aside, or Correct Sentence filed by Defendant Byron
Keith Brown.  ECF No. 237.  Defendant also filed a Motion to
Obtain Discovery Material.  ECF No. 240.  On April 16, 2014, the
Court issued an order finding that that Defendant's § 2255
motion was timely and requiring the Government to respond to the
merits of Defendant's § 2255 motion as well as the motion for
discovery.  ECF No. 242.  After an extension of time in which to
respond, the Government filed its opposition to both motions,
ECF No. 247, and after several extensions of time, Defendant
filed a one sentence reply indicating his reliance on the
arguments made in his original motion.  ECF No. 254.  Thus, the
motions are ripe.  Finding no merit to Defendant's claims, the
Court will deny the motion without an evidentiary hearing.  See
28 U.S.C. § 2255 (permitting denial of motion without a hearing

where "the motion and the files and records of the case
conclusively show that the prisoner is entitled to no relief").[1]

## I. FACTUAL AND PROCEDURAL HISTORY

On June 2, 2009, a grand jury indicted Defendant on five
counts of wire fraud and five counts of money laundering.  The
indictment charged that, from in or about 2003 through May 31,
2009, Defendant had engaged in a "scheme and artifice to defraud
and to obtain money from investors in excess of $17 million by
means of false and fraudulent practices."  ECF No. 2 ¶ 4.  As
the "Manner and Means of the Scheme and Artifice to Defraud,"
the Indictment identified several websites on which Defendant:
falsely presented himself as having years of experience in the
financial and securities industries, id. ¶ 6; falsely held out
that his companies had offices in several cities and abroad,
when in fact, he was using virtual offices, telephone answering
services, and mail forwarding services to mimic multiple
offices, id. ¶ 7; and that his company had a "capital management
license" which, in reality, was a "license" that he just found
on the internet.  Id. ¶ 8.  The Indictment also charged that
Defendant's companies utilized computer software that created

---

[1] Also pending is the Government's Motion to Amend Order of
Forfeiture to Include Substitute Assets.  ECF No. 243.  The
motion seeks the forfeiture of certain electronic goods seized
from Defendant's residence as substitute assets in partial
satisfaction of the remaining balance of the money judgment
against Defendant.  Defendant did not respond to this motion and
the motion will be granted.

the illusion for investors that they were logging onto banking websites to view their account balances when, in truth, those balances were simply made up. Id. ¶ 10. In sum, the Indictment described a classic Ponzi type scheme in which Defendant "used funds from new investors to make payments to old investors and to conceal his diversion of investors' monies." Id. ¶ 13. New investors were found through the websites and also through referrals, id. ¶ 11, and their monies were diverted to, among other things, Defendant's purchase of multiple luxury automobiles, including a Rolls Royce purchased for over a quarter of a million dollars. Id., Count Seven.

The five counts of wire fraud, Counts One through Five, identified five specific wire transfers of about $1 million each from five particular defrauded investors to the credit of either an account over which Defendant had control or an account of one of Defendant's companies, IGT Investment Company. The five counts of money laundering, Counts Six through Ten, charged that Defendant used the funds fraudulently obtained through wire transfers for the purchase of five different luxury automobiles.

After his indictment, Defendant was initially represented by the Federal Public Defenders office. Defendant then retained counsel, but that counsel was permitted to withdraw after the funds Defendant was using to pay counsel were frozen as proceeds of the fraud. On or about May 3, 2010, Attorney Anthony Martin,

3

a member of the Criminal Justice Act panel, was appointed to
represent Defendant.

A motions hearing was held on July 22, 2010.  Among the
motions heard was Defendant's Motion for Notice of Intent to
Introduce Uncharged Misconduct and Prior Convictions.  ECF No.
113.  While the motion itself did not identify any particular
uncharged conduct, in the hearing, counsel focused on evidence
related to Defendant's failure to pay federal income taxes and
on misrepresentations Defendant had made concerning amounts on
deposit in his bank account which he used to convince a
potential landlord of his ability to pay rent.  ECF No. 197, Tr.
of 7/22/10 Hearing at 11-17.

An eleven-day jury trial of this matter commenced on August
2, 2010.  On August 19, 2010, the jury found Defendant guilty on
all counts of the Indictment.  On August 31, 2010, Defendant
filed a Renewed Motion for Judgment of Acquittal and Motion for
New Trial.  ECF No. 158.  The basic premise of Defendant's
motion was his allegation that the government produced the
electronic data from his seized computers in an untimely manner
and in a form that made it difficult and prohibitively time-
consuming to locate emails and other documents that would have
been helpful to his defense.  The Court denied the motion,
opining that the government turned over this material to
Defendant with more than sufficient time to resolve any issues

4

related to accessing the data.  In denying the motion, the Court also noted "that the evidence against Defendant presented at trial was overwhelming to a degree unprecedented in the experience of the undersigned."  ECF No. 165 at 2.  On December 22, 2010, Defendant was sentenced to a term of imprisonment of 180 months and restitution was ordered in the amount of $9,830,111.16.  ECF No. 178.

Defendant filed a timely appeal of his conviction and sentence, arguing that this Court abused its discretion in denying his motions for continuance of the trial and for a new trial and erred in its application of the Sentencing Guidelines. On August 15, 2012, the Fourth Circuit denied his appeal. United States v. Brown, 492 F. App'x 421 (4th Cir. 2012). Defendant timely filed this motion under § 2255 arguing that his counsel both at trial and on appeal was ineffective.

## II. LEGAL STANDARD

Ineffective assistance of counsel claims under the Sixth Amendment are examined under the two-prong test set forth in Strickland v. Washington, 466 U.S. 668 (1984).  To succeed under Strickland, a petitioner must show both that: (1) his attorney's performance fell below an objective standard of reasonableness and (2) he suffered actual prejudice.  Id. at 687.  The first Strickland prong requires the petitioner to "'show that counsel's representation fell below an objective standard of

reasonableness' measured by 'prevailing professional norms.'"
Lewis v. Wheeler, 609 F.3d 291, 301 (4th Cir. 2010) (quoting
Strickland, 466 U.S. at 688).  There is a "strong presumption
that counsel's conduct falls within the wide range of reasonable
professional assistance," and "[j]udicial scrutiny of counsel's
performance must be highly deferential." Strickland, 466 U.S.
at 689.  When making an ineffective assistance of counsel
determination, a court must consider "the practical limitations
and tactical decisions that counsel faced." Bunch v. Thompson,
949 F.2d 1354, 1363 (4th Cir. 1991).

    The second prong of Strickland requires the petitioner to
show that counsel's errors were serious enough to deprive the
petitioner of a fair trial.  Strickland, 466 U.S. at 687.  In
essence, the petitioner must show "there is a reasonable
probability that, but for counsel's unprofessional errors, the
result of the proceeding would have been different.  A
reasonable probability is a probability sufficient to undermine
confidence in the outcome." Id. at 694.  If it is clear the
petitioner has failed to satisfy either prong of the Strickland
standard, a court need not inquire into whether he satisfied the
other. Id. at 697.

## III. DISCUSSION

    Although Defendant's motion sets out twelve separate claims
of ineffective assistance of counsel, those claims revolve

around only four issues.  First and foremost, Defendant contends that matters presented at trial differed so dramatically from the conduct charged in the Indictment that a "constructive amendment" of the Indictment or a "fatal variance" from the Indictment occurred.  Claims One through Six, Nine, Eleven, and Twelve assert that trial or appellate counsel were ineffective for failing to raise this issue in various motions or on appeal.[2] Second, Defendant argues in Claim Seven that trial counsel was ineffective at sentencing in not arguing more strenuously against two sentencing enhancements.  Third, in Claim Eight, Defendant asserts that trial counsel was ineffective when he failed to conduct adequate pretrial investigation, to call key witnesses, to effectively cross examine government witnesses, and to adequately develop his defense.  Defendant suggests that, had trial counsel been effective, it would have been established that Defendant's investments actually generated significant profits for his investors.  Finally, in Claim Ten, Defendant argues that counsel should have argued that the Government

---

[2] In opposing the Motion, the Government casts the issue in Claims Three through Six and Nine as an attempt to re-litigate the issues raised at the motions hearing regarding uncharged conduct, i.e., the introduction of evidence regarding Defendant's failure to file tax returns and misrepresentations to his landlord.  Defendant's Motion, however, makes no reference to these issues.  The "uncharged conduct" referenced in these claims is clearly the conduct that Defendant contends was different than the conduct charged in the Indictment.

engaged in deliberate misconduct and its witnesses offered perjured testimony.

In asserting that there was a "constructive amendment" to or "fatal variance" from the Indictment, Defendant suggests that the Government presented evidence of different material misrepresentations at trial than those charged in the Indictment.  Those "new" misrepresentations are that Defendant told potential investors that "their principal investment would never deplete" and "they would earn up to 35%-75% return on their principal 'non-depleting' investment every 60-day investment cycle."  ECF No. 237-1 at 3-4.  He also argues that, where the Indictment charged that the "primary method [Defendant] utilized to deliver his material misrepresentations" was his various websites, at trial, the Government offered evidence that Defendant "relied exclusively upon e-mail and telephone communications to deliver the uncharged material misrepresentations to investors."  Id. at 5-6.

A constructive amendment to an indictment occurs when "the indictment is altered to change the elements of the offense charged, such that the defendant is actually convicted of a crime other than that charged in the indictment."  United States v. Malloy, 568 F.3d 166, 177-78 (4th Cir. 2009) (quoting United States v. Randall, 171 F.3d 195, 203 (4th Cir. 1999)).  A constructive amendment, also known as a "fatal variance,"

8

happens when "the government, through its presentation of evidence or its argument, or the district court, through its instructions to the jury, or both, broadens the bases for conviction beyond those charged in the indictment." Id. at 178 (citing United States v. Redd, 161 F.3d 793, 795 (4th Cir. 1998)).  Not every difference between the government's proof and the indictment, however, constitutes a fatal variance.  See Redd, 161 F.3d at 795.  When the government's proof, while different to some degree from the indictment, does not change the crime charged in the indictment, a "mere variance" occurs. See id.  Such a variance violates the defendant's Fifth Amendment rights only if it "prejudices [him] either by surprising him at trial and hindering the preparation of his defense, or by exposing him to the danger of a second prosecution for the same offense."  United States v. Ashley, 606 F.3d 135, 141 (4th Cir. 2010).

Here, Defendant was charged with wire fraud and money laundering related to a particular fraudulent scheme and he was convicted of wire fraud and money laundering related to that scheme.  Defendant makes no argument that the differences between the Indictment and the proof at trial exposed him to the danger of a second prosecution for the same offense.  As to the alternative means by which a variance might violate his Fifth Amendment rights, Defendant acknowledges at the outset that, "to

show actual prejudice" he "would have to establish that he was surprised by the evidence at trial, and that he was hindered in his ability to prepare his defense for trial."  ECF No. 237-1 at 1.  Defendant, however, never identifies any specific evidence offered at trial of which he was not aware long before his trial.  In opposing the Motion, the Government represented that extensive discovery was turned over to defense counsel over a year before trial, including a notarized statement signed by Defendant and provided to one of the investors stating that the investor's funds would not "diminish in value."  ECF No. 247 at 7 (quoting Jan. 28, 2008, letter from Defendant to investor W.L.B.).  In his one sentence reply, Defendant does not refute the Government's representation concerning the discovery provided in this action.

Defendant implicitly, albeit, somewhat puzzlingly, concedes that defense counsel was well aware of this "variant" evidence long before trial.  He contends that at the July 22, 2010, motions hearing, "[o]ne of the motions at issue was a request regarding the government's intent to introduce – at trial – evidence of [Defendant's] uncharged acts (i.e. [Defendant's] uncharged material misrepresentations to investors that: (A) their investment principal would never deplete, (B) their principal investments would yield a return of up to 30-75% per 60 day investment cycle, as well as (C) [Defendant's] uncharged

10

use of emails and telephones to convey the above stated
uncharged misrepresentations to investors)." ECF No. 237-1 at
7. He complains, not that counsel did not raise this argument,
but simply that he did not "sufficiently argue" against the use
of these uncharged acts. Id. at 8. As noted above, the
"uncharged misconduct" argued by defense counsel at the hearing
related to completely different issues, i.e., Defendant's
failure to file tax returns and misrepresentations to
Defendant's landlord. Nonetheless, Defendant's current
contention that counsel should have made this argument at the
hearing is entirely consistent with what Defendant knows to be
true – that the defense was well aware of the evidence that the
Government was going to offer at trial. Because the Court finds
that there was no "constructive amendment" or "fatal variance,"
Defendant's trial and appellate counsel were not ineffective for
not raising this unsupportable argument.

Defendant's claim that his counsel was ineffective at
sentencing is equally unavailing. Defendant disparages his
counsel for stipulating that his use of websites to market his
"investments" satisfied the mass-marketing criteria for a two
level enhancement under U.S.S.G § 2B1(b)(2)(A)(ii). Because the
enhancement was clearly applicable, there was nothing
ineffective in stipulating to that applicability. See U.S.S.G.
§ 2B1.1, cmt. n.4(A) (defining "mass-marketing" to include

11

fraudulent schemes "conducted through solicitation by . . . the
Internet . . . to induce a large number of persons to . . .
invest for financial profit"); United States v. Hall, 604 F.3d
539 (8th Cir. 2010) (holding that the mere fact that the
defendant operated a website devoted to the solicitation of
investments in his fraudulent scheme is sufficient to support
the application of this enhancement).  Defendant also contends
that counsel should have argued more vigorously against a two
level enhancement for an offense involving "10 or more victims."
Because the same enhancement was applicable under the mass-
marketing clause, any finding regarding the number of victims
was immaterial.  U.S.S.G. § 2B1.1(b)(2) (stating that the two
level enhancement should be applied if the offense "(i) involved
10 or more victims; or (ii) was committed through mass-
marketing") (emphasis added); see also United States v. Brown,
492 F. App'x at 423.

Defendant also argues that counsel was ineffective at
sentencing "when he failed to sufficiently address the two-level
increase for [Defendant's] alleged violation of a judicial or
administrative order."  ECF No. 237-1 at 14.  Defendant had been
the subject of a cease and desist order from the Securities
Commission in Washington D.C. for selling securities without a
license and for being an unregistered investment advisor.
Without offering any factual or legal support, Defendant

12

contends that, had counsel argued that this order was not "a final agency adjudication," the increase would not have been applied.

The Court disagrees.  What was then Section 2B1.1(b)(8)(C) of the Sentencing Guideline provided for a two-level enhancement where "the offense involved ... a violation of any prior, specific judicial or administrative order, injunction, decree, or process not addressed elsewhere in the guidelines."[3]  The rationale for this enhancement is that a "defendant who does not comply with such a prior, official judicial or administrative warning demonstrates aggravated criminal intent and deserves additional punishment."  U.S.S.G. § 2B1.1 cmt. n.8(C).  The cease and desist order, of which Defendant was well aware, was more than sufficient to alert him to the unlawfulness of his conduct and to trigger the enhancement.  See United States v. Colvin, 467 F. App'x 181, 183 (4th Cir. 2012) (affirming application of enhancement where the defendant continued to hawk his investments despite a cease and desist order); United States v. Nathanson, 406 F. App'x 162, 163 (9th Cir. 2010) (same), United States v. Spencer, 129 F.3d 246, 252-53 (2d Cir. 1997) (holding that an informal administrative "process" of negotiation and an informal "decree" was sufficient to support the enhancement for violation of prior order).  Thus, counsel

---

[3] This provision is now found at U.S.S.G. § 2B1.1(b)(9)(C).

cannot be faulted for making an argument that would not have altered the Court's decision.

Finally, as to counsel's purported deficiencies at sentencing, Defendant argues that counsel should have presented evidence that would have demonstrated that, instead of generating a loss to the victims of about $9.5 million, his investments "generated profits on behalf of investors in excess of $30 million (nearly doubling every penny investors had entrusted to [Defendant])." ECF No. 237-1 at 15.  This argument is closely related to Defendant's remaining two ineffective assistance of counsel contentions, i.e., that trial counsel was ill prepared for trial and that trial counsel should have argued that the government deliberately mischaracterized the evidence at trial.  Defendant contends that, had counsel found and called the right witnesses and presented the right documents, the $30 million of profits generated by Defendant's leveraged investment strategy would have been established.  Id. at 16-17. Furthermore, he boldly declares that the Government knew full well that Defendant's legitimate investments "yielded massive profits for investors and resulted in there being no actual loss to investors."  Id. at 19.  In his request for discovery, Defendant claims he is seeking the elusive documents that would establish his successful investments.

As to all of these related claims and contentions, the
Court finds that they are so at odds with the overwhelming
evidence presented at trial and, perhaps just as significantly,
so at odds with common sense, that they are not worthy of any
credence, whatsoever.  Discovery in this case went on for over a
year during which time Defendant was not in custody and thus was
available to assist counsel and yet, somehow, Defendant was
unable to direct counsel to the $30 million of profits that were
sitting in some still-undiscovered investment portfolios
presumably controlled and managed by Defendant.  While Defendant
proffers a list of witnesses that should have been interviewed
and documents that should have been subpoenaed, ECF No. 237-1 at
17, he provides no clue as to how those witnesses or documents
would support this fanciful claim of massive profits.
Defendant's "vague, conclusory, or palpably incredible"
allegations unsupported by actual facts are insufficient to
support a motion under § 2255, Machibroda v. United States, 368
U.S. 487, 495 (1962), nor do they warrant ordering discovery.
See Bracy v. Gramley, 520 U.S. 899, 908-09 (1997) (holding that
discovery is only warranted "where specific allegations before
the court show reason to believe that the petitioner may, if the
facts are fully developed, be able to demonstrate that he is . .
. entitled to relief").

For these reason, the Court will deny Defendant's motion
for discovery as well as his motion to vacate his sentence.   A
separate order will issue.

/s/

      William M. Nickerson
      Senior United States District Judge

DATED: April 8, 2015